The chancellor delivered the opinion of the court:
 

 Johks, Jr.,
 
 Chancellor.
 

 The questions which have been agitated by counsel in the argument of the points presented, if considered, would require of the court to determine as well the matter of estop-pel, as whether, by reason of-what is contained in the recital of the partition deed relative to the derivation of title by 0‘Flinn, under the deed of 1792, from Woodcock and others, the effect of what otherwise would be an estoppel, is avoided. In the case.of
 
 Simmons' lessee
 
 vs. Logan, (1
 
 Harr. Rep.
 
 110,) the general question, exclusive of the effect and operation of the recital as being matter of avoidence, was decided; and this same, partition deed, by the opinion and judgment of the Superior Court, considered, and held to be conclusive upon the parties, on the ground of estoppel. The point presented by the plaintiff’s counsel and now relied on, is the new matter of avoidance, but for the appearance of which, in the same deed, it iá admitted, the decision of the Superior Court would not be impeached. To arrive at the correct position, it is only requisite to consider the effect and operation of the partition deed of 18l'l, without the recital referring to the Woodcock deed of 1792: takeffrom it that declaration respecting the origin and vesting of the fee simple title in 0‘Flinn, and there is no pretence of any thing else appearing- on the face of the instrument inconsistent with the capacity of the respective parties mutually to grant and convey to each other the land and estate which was the subject of partition; in all other respects the recital stands well with and affirms the title of the respective grantors as coparceners. In the absence, therefore, of this reference to the deed of 1792, accounting for the origin of 0‘Flinn’s title, one of the parties conveying, we have the plain case of a partition deed, and thé parties thereto subsequently entering upon, and severally holding and occupying their distinct and separate parts according to the grant, and 0‘Flinn until his death acquiescing, and never in his lifetime finding fault with or attempting to invalidate what he had done and admitted under his own hand and seal as his act and deed. Patrick 0‘Flinn having thus during his life, held, occupied and enjoyed the title, with the chance of the entire fee simple, had he survived his wife, it would seem independent of the deed, that such a partition, holding and possession as this, if made in pursuance of a parol agreement, ought to be held conclusive upon the ground of long acquiescence. Such was the decision iu
 
 Carter's ex’r. vs.
 
 Carter, (5
 
 Munf.
 
 108,) in which case
 
 *108
 
 it was held that a partition which had been long acquiesced in, and acted upon by the parties generally, ought not to be disturbed on the ground of irregularity only; though, if it be unjust or illegal, it may be impeached by a party who has never acquiesced. And where the agreement for partition was entered into by parol only; yet after it has been actually executed and the enjoyment in severalty has for a length of time gone in conformity thereto, a Court of Chancery will not allow such an agreement so acted upon to be disturbed, provided the parties agreeing were
 
 competent to
 
 bind the inheritance. (2
 
 Vesey, Jr.
 
 570.) In the case under consideration, the agreement is under seal, made by parties competent, according to their own admission, to bind the inheritance; it has been fully executed, and the enjoyment in severalty has for a length of time gone in conformity thereto. If in a case of acquiescence under a parol agreement a party is concluded, how much more strongly does the estoppel apply when you have additionally the solemn act of the party under hand and seal, executed as his deed, together with the acknowledgment thereof a year after the execution. The reason upon which the law of estoppel is founded, is not the truth of the fact, but that the party either by his act or by matter of record is concluded. Hence it is, that if a man take a lease by indenture of his own land, whereof he is in actual possession, this estops him to say the lessor had nothing in the land; for.by acceptance thereof by indenture, he is as perfect a lessee as if the lessor had an absolute fee. (4
 
 Bac. Mb.
 
 187.) So if the disseisor by deed indented make a feoffment in fee whereunto livery is requisite; yet the indented deed shall not suffer the livery made to work a remitter to the disseisee, but shall estop him t.o claim his own estate; the deed indented being the deed of both parties, the taker as well as the giver is concluded.
 
 (Co. Litt.
 
 363,
 
 b.)
 
 If two make partition in a court of record, where one of them have no right, he thereby shall gain a moiety by estoppel.
 
 (Co. Litt.
 
 170,
 
 b. note
 
 3.) It may, therefore, be considered, and we are of opinion, that the partition deed of 1811, as to the parties and all claiming under them as privies, is an estoppel, unless the effect thereof is avoided by the recital referring to the acquisition of the title to part of the land by 0‘Flinn from' Woodcock, by deed dated 1792. This reference to the inception of Patrick 0‘Flinn’s title, as derived from Woodcock in 1792, is not subsequently stated to have remained unchanged in him, but is immediately followed by a recital that ever since the year 1792, all the land had been held by the parties as coparceners. How this title as to that part of the land
 
 *109
 
 purchased by OFlinn from Woodcock accrued, or by what conveyance the parties effected it, they have not disclosed; but they have unequivocally stated and admitted the fact, that ever since the year 1792, down to the year 1811, the date of the partition deed, No. 7 hath been held,
 
 considered
 
 and enjoyed by the aforesaid coparceners, as and for a pa.rt of the estate so as aforesaid held by them in coparcenary. The parties after thus distinctly stating and admitting that they respectively had an estate in coparcenary as well in No. 7 as the other land, proceed to recite that as coparceners they have concluded and agreed to have, hold and enjoy their respective parts and shares of and in the before mentioned lands in severalty; following this recital with a covenant mutually to and with each other for partition. It is to obviate the effect of the deed as an estoppel that the recital of the origin of 0‘Flinn’s title as derived from Woodcock has been relied on, for it is insisted that there is nothing to show how the fee simple title was conveyed from Patrick OFlinn, so as to account for and explain the manner in which, or the mode by which, the parties became copar-ceners in No. 7. if the recital had fully explained this, or if it was-not for the difficulty resulting from the omission of the parties, there would be no necessity for relying upon the estoppel. As they have stated the existence of the title among themselves as coparceners, we must consider they knew and considered as done and existing, all acts necessary to vest them with the title as stated to be in them and actually subsisting when they by deed indented made partition. The declaration contained in the recital'that OFlinn purchased No. 7 from Woodcock in 1792, does not contradict nor necessarily render it impossible for the title of coparcenaiy subsequently to have arisen, for it may have been conveyed to Marshall immediately after the purchase and by descent vested with the land devised, so as to have produced the title according to the recital. But in this deed it is not the recital alone which works the estoppel, it is the acceptance of title; the recital of the title and then the Acceptance under the grant from Mary Huggins must conclude Patrick OFlinn and all claiming under him; for as these admissions and solemn acts of his were long after he had acquired title to No. 7; and done when he was fully competent to bind the inheritance; it does seem impossible to impeach or invalidate them by reason of his having recited in the deed of partition that he had purchased No. 7 from Woodcock, unless the existence of this fact in 1792, necessarily precludes the title from ever having passed out of him, as we cannot from the fact or matter relied on discover any such necessary or inevitable effect, we cannot
 
 *110
 
 consider such a recital to operate so as to preclude the estoppel, or so to make the truth appear by the deed as to prevent that being an estoppel which would otherwise be so considered.
 

 Bayard
 
 and
 
 Clayton,
 
 for plaintiff.
 

 Wales, Booth
 
 and
 
 Frame,
 
 for defendants.